concurring in part and dissenting in part:
¶ 37. I would deny Bell’s Motion for Leave to File Successive Petition for Post-Conviction Relief. In Chase v. State, 873 So.2d 1013 (Miss.2004), this Court required a defendant seeking a hearing on mental retardation to
attach to the motion an affidavit from at least one expert, qualified as described above, who opines, to a reasonable degree of certainty, that: (1) the defendant has a combined intelligence quotient (“IQ”) of 75 or below, and; (2) in the opinion of the expert, there is a reasonable basis to believe that, upon further testing, the defendant will be found to be mentally retarded....
Id. at 1029. Upon receipt of the motion with attached affidavits, along with any response from the State, the trial court must order further testing, followed by a hearing on the motion. Id.
¶ 38. I believe this standard is inadequate to provide the court with a realistic preliminary assessment of whether a defendant is likely to be mentally retarded. As recognized in Atkins, mental retardation involves more than a simple IQ score. See Atkins v. Virginia, 536 U.S. 304, 308 n. 3, 122 S.Ct. 2242, 2245, 153 L.Ed.2d 335 (2002). Rather, the definitions of mental retardation cited in Atkins and adopted by this Court require significant limitations in adaptive functioning in addition to subav-erage intellectual functioning.[25] While the test announced in Chase requires an expert opinion on subaverage intellectual functioning, it mandates that a hearing occur in the absence of any evidence that the defendant suffers from limitations in *107 adaptive functioning. Chase, 873 So.2d at 1029.
¶ 39. Much like the procedures followed by our public school system, prescreening to determine a defendant’s adaptive functioning should be conducted before a court orders the administration of a full battery of tests to determine mental retardation. Such data pertaining to the defendant’s current level of adaptive functioning would be readily available from the defendant, corrections officials, family members, social workers, and spiritual leaders, as well from others who interact with the defendant on a routine basis.
¶40. Bell’s psychological expert, Dr. Marc Zimmerman, provides no information pertaining to Bell’s level of adaptive functioning. However, materials attached to the motion establish that Bell’s level of adaptive functioning was in the normal range two years after his arrest, in 1993. The examiner who interviewed Bell at that time determined that he had a valid drivers’ license, had adequate math skills, had a girlfriend and a child, and had previous work experience cutting hair. The examiner stated “clmt’s [sic] adaptive functioning appears to [be] adequate.” Although Dr. Zimmerman’s affidavit points to deficiencies in the prior IQ testing of Bell, his affidavit is completely silent on Bell’s level of adaptive functioning.[26] Because Bell’s motion contains no evidence that he has adaptive functioning limitations, the motion is inadequate to establish a reasonable probability that further testing will reveal Bell to be mentally retarded. In light of this evidentiary deficiency, I would deny Bell’s Motion for Leave to File Successive Petition for Post-Conviction Relief.
RANDOLPH AND PIERCE, JJ„ JOIN THIS OPINION.

. These definitions include the following:
The American Association on Mental Retardation (AAMR) defines mental retardation as follows: “Mental retardation refers to substantial limitation in present functioning. It is characterized by significantly subaverage intellectual functioning, existing concurrently with related limitations in two or more of the following applicable *107 adaptive skill areas: communication, self-care, home living, social skills, community use, self-direction, health and safety, functional academics, leisure, and work. Mental retardation manifests before age 18.” Mental Retardation: Definition, Classification, and Systems of Supports 5 (9th ed. 1992).
The American Psychiatric Association’s definition is similar: "The essential feature of Mental Retardation is significantly subaver-age general intellectual functioning (Criterion A) that is accompanied by significant limitations in adaptive functioning in at least two of the following skill areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety (Criterion B). The onset must occur before age 18 years (Criterion C). Mental Retardation has many different etiologies and may be seen as a final common pathway of various pathological processes that affect the functioning of the central nervous system." Diagnostic and Statistical Manual of Mental Disorders 41 (4th ed.2000). "Mild" mental retardation is typically used to describe people with an IQ level of 50-55 to approximately 70. Id., at 42-43.
See Atkins, 536 U.S. at 308 n. 3, 122 S.Ct. 2242; Chase, 873 So.2d at 1027-28; see also Hughes v. State, 892 So.2d 203, 214-16 (Miss.2004).

. Unlike Dr. Zimmerman’s affidavit, the expert's affidavit in Chase contained an opinion that Chase had an adaptive functioning deficiency. Chase, 873 So.2d at 1022.